Priority
Send
Enter
Closed
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only___



FILED
CLERK, U.S. DISTRICT COURT

APR 26 2002

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMON CAUSE, SOUTHERN CHRISTIAN LEADERSHIP CONFERENCE OF GREATER LOS ANGELES, SOUTHWEST VOTER REGISTRATION EDUCATION PROJECT, CHICANO FEDERATION OF SAN DIEGO COUNTY, AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, BRYAN CAHN, MIGUEL CONTRERAS, LAURA HO, REVEREND NORMAN JOHNSON, JOANNE McKRAY, TRISHA MURAKAWA, THOMAS RANKIN, and BOB RICHARDS, )<br><br>Plaintiffs, )<br><br>v. )<br><br>BILL JONES, in his official capacity as California Secretary of State, )<br><br>Defendant. ) | CV 01-03470-SVW (RZx)<br><br>ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION |



ENTERED ON ICMS
4-30-02
APR 3 0 2002
CV

I.  INTRODUCTION

On February 19, 2002, this Court issued an order finding that, based on the uncontroverted evidence in the record, as well as the admission by Defendant at oral argument, it was feasible for the nine California counties currently using the pre-scored punch card voting systems to convert to "other certified voting equipment" by March 2004.  Therefore, as that was the only issue to be decided at trial,

—76

1  pursuant to the October 12, 2001 Stipulation and Order, the parties

2  were directed to lodge a form of consent decree within seven days

3  after the issuance of the order.

4      Defendant now brings a motion for reconsideration claiming that

5  the Court had failed to consider the order's negative impact on the

6  public interest.  Furthermore, Defendant claims that the Court's

7  order was improperly issued.

8      As set forth below, Defendant's motion for reconsideration is

9  DENIED.

10

11  **II.  DISCUSSION**

12      **A.  Failure to Consider the Public Interest**

13      On October 12, 2001, the parties entered into a stipulation,

14  signed by the Court, wherein they agreed that the only issue

15  remaining in the case prior to the parties entering into a consent

16  decree was "whether it is feasible to replace Votomatic and Pollstar

17  punch-card voting systems with other certified voting equipment in

18  the nine California counties that currently use such systems in

19  advance of either the 2004 primary election or the 2004 general

20  election."  On February 19, 2002, the Court ruled on that issue,

21  thereby eliminating all remaining triable issues that had been set

22  forth by the parties.

23      Now Defendant alleges that the Court should have considered

24  issues other than the only issue that the parties had previously

25  agreed to have this Court decide.  In particular, Defendant argues

26  that the Court neglected to consider "how the public interest would

27  greatly benefit from providing the affected counties with the option

28

1  of converting to touch screen voting systems."  Defendant's Motion

2  For Reconsideration, at 2.

3      However, the issue of touch screen voting systems is not before

4  the Court in this case.  Through the October 12th stipulation, the

5  parties knowingly and voluntarily narrowed the triable issue in this

6  case to encompass only the feasibility of converting to non-punch-

7  card certified voting systems in time for the 2004 elections.

8  Accordingly, the Court enforced that stipulation and confined the

9  trial to that issue.[1]  See Sinicropi v. Milone, 915 F.2d 66, 68 (2d

10  Cir. 1990) ("Courts generally enforce stipulations that narrow the

11  issues in a case."); FDIC v. St. Paul Fire & Marine Ins. Co., 942

12  F.2d 1032, 1038 (6th Cir. 1991) ("Stipulations voluntarily entered by

13  the parties are binding . . .").  Since there were no material facts

14  in dispute concerning the interpretation of "feasibility," nor any

15  dispute concerning the facts relevant to a resolution of the triable

16  issue, the Court properly decided this case as a matter of law.[2]

17  _____

18  [1] Secretary Jones has not argued that this Court should set
    aside the stipulation.  At oral argument on this motion, the Court

19  specifically pointed out this fact to Defendant, and still Defendant
    did not make such a request.  A request to set aside a stipulation is

20  permitted under prevailing law, if, for example, adherence to such a
    stipulation would have resulted in manifest injustice to a party, or

21  if a party entered into the stipulation by inadvertence.  See Seymour
    v. Summa Vista Cinema, Inc., 809 F.2d 1385, 1388 (9th Cir. 1987)

22  amended by 817 F.2d 609 (9th Cir. 1987); McMorgan & Co. v. First
    California Mortgage Co., 931 F.Supp. 699, 703 (N.D. Cal. 1996) ("The

23  Court has broad discretion in deciding whether to hold the parties to
    a stipulation.").

24      However, since Defendant has not argued that any reasons exists

25  why this Court should set aside the stipulation, nor has he even made
    such a request, the Court will enforce the stipulation as agreed upon

26  by the parties.

27  [2] In his trial brief, Defendant noted, in support of his
    argument for the proper interpretation of "feasible," that Secretary

28  Jones had rejected the term "possible" in favor of the word

1    In making its decision, the Court considered all of the relevant

2    factors bearing on the triable issue.  At the commencement of this

3    case, the underlying issue was whether the use of the pre-scored

4    punch card voting systems (specifically, the Votomatic and Pollstar

5    systems) were in violation of the Fourteenth Amendment and the Voting

6    Rights Act.  That issue was never reached by the Court, because,

7    subsequent to the filing of this action, Defendant Secretary Jones

8    agreed to decertify the Votomatic and Pollstar systems, thereby

9    making the issue of their constitutionality moot.  Nevertheless, as

10   the parties agreed upon in the October 12th stipulation, "the Court

11   shall, in determining whether it is feasible to replace such systems

12   in advance of either 2004 election, apply the same standards that

13   would have applied if Plaintiffs had prevailed on the merits of their

14   claims."  Therefore, the Court was directed to address the issue of

15   whether it was feasible to replace the Votomatic and Pollstar systems

16   assuming that the use of such systems amounted to a violation of the

17   Fourteenth Amendment right to equal protection of the law and the

18   fundamental right to vote.

19       Now, despite having stipulated to the issues set forth above,

20   Secretary Jones contends that the Court should have not only decided

21   whether it was feasible to replace the current systems with other

22   systems that Secretary Jones has certified as suitable for use, but

23

24   "feasible" in drafting the stipulation.  While the Court considered
     this argument in its determination of the proper interpretation of
25   "feasible," Defendant had not presented, nor had he indicated any
     intention to present, any evidence in this regard for trial.
26   Furthermore, even now, neither party has asserted that an
     interpretation of the word "feasible" would require consideration of
27   extrinsic evidence, instead of being a legal determination capable of
     being made by the Court at this time.
28

-4-

1  also whether such a change is in the public interest.  The Court

2  finds it self-evident that replacing voting systems that deprive

3  individuals of the right to vote is clearly in the public interest.

4  The only question remaining for the Court to decide, as set forth by

5  the parties, was whether such a change could feasibly be accomplished

6  in time for the 2004 elections.  In this motion, however, Secretary

7  Jones essentially contends that the public interest was not properly

8  considered by the parties in agreeing to the feasibility issue being

9  the sole issue for trial, and as a result the Court must also decide

10  whether the public interest would be better served by allowing the

11  use of these presumably-unconstitutional punch card systems in the

12  2004 election, in exchange for the counties being able to implement

13  the touch screen voting systems by July 2005.

14      Secretary Jones is essentially creating a new issue for trial,

15  disguised as a claim that the public interest was ignored in the

16  issuance of the Court's order.  He makes this argument

17  notwithstanding the fact that the public interest is actually the

18  sole reason why this Court needed to decide whether it was feasible

19  for the punch card system to be replaced with a certified system - as

20  determined *by Secretary Jones himself* - in the first place.

21      Nevertheless, even if this Court was faced with the issue of

22  deciding whether the public interest is better served by allowing

23  more time for the nine California counties at issue to implement a

24  touch screen system, the Court has no authority to direct such a

25  result.  The fact remains that the counties are not parties to this

26  case.  The Court cannot mandate that any county use any particular

27  voting system, and neither can Secretary Jones.  As stated at oral

28

1 argument, the only authority that the Secretary of State has in this

2 regard is whether to certify systems or decertify systems.

3 Accordingly, since Secretary Jones has not indicated any intention to

4 decertify every system other than the touch screen system, there can

5 be no requirement that the counties implement the touch screen system

6 at all!  Even if the Court decides that the public interest is best

7 served by the use of the touch screen systems, and directs the

8 Defendant to decertify the punch card systems by 2005, or even 2010,

9 there is still absolutely no guarantee that the counties would

10 implement a touch screen system, even if they stated an intention to

11 do so.  All that is required under the law is that the counties use

12 certified systems.  Since the Court has concluded that it was

13 feasible for these counties to convert to "other certified systems"

14 in time for the 2004 elections, as set forth in the February 19th

15 Order, the only issue properly before the Court has been decided, and

16 has been decided in proper consideration of the public interest of

17 eliminating systems that deprive individuals of the right to vote.

18 Therefore, Defendant has not satisfied the requirements under

19 Local Rule 7-18, which requires a motion for reconsideration to be

20 based on "a manifest showing of a failure to consider material facts

21 presented to the Court."[3]  The Court has considered all of the

22 material facts presented, and issued its order accordingly.

23

24

25

26 _____

[3] "A 'material' fact is one that is relevant to an element of a
27 claim or defense and whose existence might affect the outcome of the
suit."  T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors
28 Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

**B.    Procedural Basis for the Court's Decision**

   Defendant also argues that the Plaintiffs' request for judgment as a matter of law was really an improperly disguised summary judgment motion.  Defendant's argument is without merit.

   The Court's order was not based on a summary judgment motion pursuant to Fed. R. Civ. P. 56(c).  Rather, the Court made a judgment as a matter of law pursuant to its authority to grant summary judgment *sua sponte* in the context of a final pretrial conference.  See Portsmouth Square, Inc. v. Shareholders Protective Comm., 770 F.2d 866, 869 (9th Cir. 1985).  As set forth in Portsmouth, "If the pretrial conference discloses that no material facts are in dispute and that the undisputed facts entitle one of the parties to judgment as a matter of law, a summary disposition of the case conserves scarce judicial resources.  The court need not await a formal motion, or proceed to trial, under those circumstances."  Id.

   Here, as indicated by the Defendant's admission at the pretrial conference, no material facts concerning the only triable issue were in dispute.  As a result, Plaintiff was entitled to judgment as a matter of law, as set forth in the Court's February 19th Order.  Furthermore, Defendant had a full and fair opportunity to develop and present facts and legal arguments in support of its position, and therefore this Court's motion was proper.  See id.; Berkovitz v. Home Box Office, Inc., 89 F.3d 24, 29 (1st Cir. 1996) ("Though a district court may enter summary judgment sua sponte at, or in consequence of, a pretrial conference, the court must ensure that the targeted party has an adequate opportunity to dodge the bullet.").

1    Defendant does not claim that he was not fully heard on the

2    issue of the feasibility of converting from the punch card systems to

3    other certified systems by the 2004 elections.  Indeed, at the time

4    of the ruling, the record contained both Defendant's 24-page

5    Memorandum of Contentions of Fact and Law and Defendant's 20-page

6    Trial Brief.  Moreover, pursuant to the Court's July 2, 2001 Order

7    re: Civil Trial Preparation, in which the parties were required to

8    submit declarations containing the direct testimony of their

9    witnesses, Defendant had already submitted the extensive declarations

10   of his primary witnesses.  Finally, Defendant plainly acknowledged at

11   oral argument on February 4, 2002 that it was in fact possible for

12   each of the nine California counties using the punch card system to

13   covert to other systems by the 2004 election.[4]

14   Furthermore, contrary to Defendant's argument, Defendant did

15   have an opportunity to respond to Plaintiffs' arguments.  The Court

16   specifically inquired of Defendant at the February 4th Pretrial

17   Conference, upon learning that Plaintiffs intended to raise the issue

18   in their trial brief of whether the feasibility question was already

19   conclusively determined, whether Defendant intended to respond to

20   that brief.  Defendant indicated that his trial brief was a response

21

22   [4] In all of his submissions, Defendant has never denied the fact
     that it is possible to change from pre-scored punch card voting
     systems to other certified voting equipment by the 2004 elections.
23   His only argument in this regard is that it is preferable for the
     counties to use the touch screen system instead of any other system.
24   While this is arguably so, the Court was never asked to decide which
     system was most optimal out of all of the certified systems, only
25   whether a change to another certified system was feasible.  Since, as
     discussed above, Defendant has never asked this Court to relieve him
26   of the stipulation and consider the issue of whether the touch screen
     system is the most desirable system, the Court was able to decide the
27   only triable issue set forth by the parties at the time its ruling
     was made.
28

-8-

1   to Plaintiffs' opening brief, in which the same substantive argument

2   was raised.  In fact, Defendant's trial brief did address the precise

3   issues considered by the Court in making its February 19th ruling,

4   including the issues related to the feasibility of changing voting

5   systems, and Defendant's arguments regarding the public interest

6   concerns.  Additionally, in his current motion for reconsideration,

7   Defendant has once again had the opportunity to point out any facts

8   that he felt the Court should have considering in making its ruling,

9   and the Court has duly considered his arguments.

10      Moreover, the Court's ruling would have also been proper under

11   Fed. R. Civ. P. 52(c).  According to Rule 52(c), "If during a trial

12   without a jury a party has been fully heard on an issue and the court

13   finds against the party on that issue, the court may enter judgment

14   as a matter of law against that party with respect to a claim or

15   defense that cannot under the controlling law be maintained or

16   defeated without a favorable finding on that issue."[5]

17      Therefore, the Court's February 19, 2002 Order, wherein the

18   Court has set forth its requisite findings of fact and conclusions of

19

20      [5] Defendant contends that Rule 52(c) only allows a trial court
to enter a judgment as a matter of law after the commencement of
21   trial.  However, the Advisory Committee Note discussing the 1991
Amendment, in which subdivision (c) was added, contains the following
22   language: "[Subdivision (c)] parallels the revised Rule 50(a), but is
applicable to non-jury trials.  It authorizes the court to enter
23   judgment *at any time* that it can appropriately make a dispositive
finding of fact on the evidence."  Fed. R. Civ. P. 52, Advisory
24   Committee Notes (emphasis added).  To the extent that "at any time"
could be construed to mean at any time during trial, the Court had
25   already directed the parties to submit, prior to trial, the direct
testimony of their witnesses in the form of declarations, signed
26   under penalty of perjury, pursuant to its July 2, 2001 Order re:
Civil Trial Preparation.  Therefore, Defendant's primary witnesses
27   had already testified, and the Court was able to make a dispositive
28   finding of fact subsequent to that testimony.

law, was procedurally authorized and constitutes a valid final judgment on the only triable issue asserted by the parties in this case.

## III. CONCLUSION

As discussed above, Defendant's motion for reconsideration is DENIED.

IT IS SO ORDERED.

DATED: 4/26/02

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE